IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

              Plaintiff,

vs.

SHAWNDELL L. BURKE,

              Defendant.

4:17CR3089

GOVERNMENT BRIEF IN RESPONSE
TO DEFENDANT'S MOTION TO
REDUCE SENTENCE FOR
COMPASSIONATE RELEASE AND
OTHER RELIEF

Defendant Shawndell L. Burke, (hereinafter: Burke), filed a Motion to Reduce Sentence. (Filing #213). Burke seeks an order from this Court reducing her sentence to house arrest pursuant to 18 U.S.C. § 3582(c)(1)(A. *Id.* The Government respectfully suggests that Burke's Motion should be denied, because she has failed to establish that she qualifies for a sentence reduction under the applicable statutes and Sentencing Guidelines. However, if this Court does order that she be released, the Government respectfully requests that Burke be quarantined within BOP for at least 14 days prior to release, provided she does not test positive for the COVID-19 virus during that time-frame.

**Procedural Background**

On July 18, 2017, the Grand Jury returned a five-count Indictment against Burke and her co-defendant, Rodney Mazzulla. Burke was charged with conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine (actual) and distribution of and possession with intent to distribute 50 grams or more of methamphetamine (actual). (Filing #1). On November 15, 2017, she pled guilty to the conspiracy charge in return for dismissal of the distribution/possession with intent to distribute charge. (Filing 65). On February 9, 2018, Burke was sentenced to 168 months. (Filing 97).

On January 13, 2020, Burke's sentence was reduced pursuant to the Government's Fed .R. Crim .P. 35(b) Motion[1] to 54 months. (Filing 208). Her current expected release date, according to BOP website, is April 16, 2021.

On April 2, 2020, Burke filed a request for compassionate release with BOP.  (Exhibit A). On May 14, 2020, BOP denied her request.  (Exhibit B).

Burke filed the instant motion for compassionate release on May 18, 2020.  (Filing 213). In her motion, she states that she requested compassionate release from the warden of FMC Waseca, where she is currently housed, on April 2, 2020, and that she had not received a response, within 30 days. *Id.*[2]  As of May 26, 2020, there were no confirmed cases of COVID-19 at FCI Waseca,[3] yet she claims her health would be less in jeopardy if she were released to live with her daughter in Grand Island in Hall County where the number of confirmed COVID-19 cases is among the highest in the state of Nebraska.[4]

**Argument**

**I.      Burke's Request for a Reduced Sentence Should be Denied.**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). As the Supreme Court has recognized, finality is an important attribute of criminal judgments, and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Accordingly, it is

---

[1] Filing 194.
[2] Burke's Motion shows it was mailed to this Court on May 14, 2020, the same date the Denial was issued.  Therefore, she may not have received it prior to sending her Motion to this Court.
[3] https://www.bop.gov/coronavirus/
[4] https://www.wowt.com/content/news/Nebraska-COVID-19-cases-reported-Wednesday-May-20-2020-570611571.html

well established that once a district court has pronounced sentence and the sentence becomes final, the court has no inherent authority to reconsider or alter that sentence. Rather, it may do so only pursuant to statutory authorization. *See, e.g.*, *United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979); *United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008); *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997) ("A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization.") (internal quotation marks omitted).

Title 18 U.S.C. Section 3582(c)(1)(A), as modified by the First Step Act, allows the Director of the BOP or an inmate to move the court for the reduction of an inmate's prison sentence. A sentence reduction pursuant § 3582(c)(1)(A) is also referred to as "compassionate release." *See* Pub. L. No. 115-391, § 603(b). Section 3582(c)(1)(A) provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment**.--The court may not modify a term of imprisonment once it has been imposed except that—
>
> > **(1)** in any case—
> >
> > > **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> > >
> > > > **(i)** extraordinary and compelling reasons warrant such a reduction; or
> > > >
> > > > **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements
> issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). According to the statute, an inmate may petition the court for a reduction of sentence under § 3582(c)(1)(A) only after certain procedural requirements are met. Specifically, when all administrative remedies have been exhausted or after a lapse of 30 days from requesting such relief from the warden of the BOP facility in which the defendant is held.

When, as occurred here, an inmate's request is denied by the Warden, the inmate may appeal the denial through the Administrative Remedy Procedure in 28 CFR 542(B). *See* Federal Bureau of Prisons Program Statement 5050.50, *Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*, § 571.63 Denial of Request, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. An inmate has not exhausted their administrative remedies until they receive a denial from either General Counsel or the Director of the Bureau of Prisons. *Id.*

The inmate bears the burden of proving both that she has satisfied these procedural requirements for judicial review—*i.e.* that she has "exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or that 30 days have lapsed "from the receipt of such a request by the warden"—and that "extraordinary and compelling reasons" exist to support the motion. § 3582(c)(1)(A); *see United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("[A] defendant, as the § 3582(c)(2) movant, bears the burden of establishing that retroactive amendment has actually lowered the guidelines range in his case."). Burke has not provided proof to this Court that she has exhausted her administrative remedies within BOP.

4

Burke has not shown that compassionate release is warranted. Pursuant to § 3582(c)(1)(A), the Court has the authority to entertain her motion to reduce his term of imprisonment after considering the § 3553(a) factors if "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). Congress delegated to the Sentencing Commission the task of defining such reasons. *See* 28 U.S.C. § 994(t); *see also* U.S.S.G. §1B1.13, comment (n.1). Under the Guidelines, "extraordinary and compelling reasons" exist under the following circumstances:

(A)     **Medical Condition of the Defendant.--**

(i)  The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)  The defendant is--

(I)     suffering from a serious physical or medical condition,

(II)    suffering from a serious functional or cognitive impairment, or

(III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)     **Age of the Defendant**.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)     **Family Circumstances.—**

(i)  the death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

      (D)      **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)

U.S.S.G. §1B1.13, comment (n.1).

      Burke does not qualify for a reduction of her sentence under any of the foregoing sections. She does not allege that she suffers from any of the medical conditions described in U.S.S.G. §1B1.13, comment (n.1) (A)(i), nor has she alleged or provided any evidence establishing that she suffers from any serious medical, cognitive or mental conditions which ".substantially diminishes" her "ability . . . to provide self-care within the environment of a correctional facility and from which . . . she is not expected to recover" as set out in section (A)(ii) of that note. Burke does not meet the age requirement of section (B).[5] Burke does not claim any of the family circumstances outlined in subsection (C). She states that family members have health issues, but those family members are not her minor children, spouse or registered partner. (Filing 213, and Exhibit A). Finally, under subsection (D), BOP found no other extraordinary or compelling reason or combination of factors which would justify early release. (Exhibit B). Therefore, Burke has not demonstrated the existence of extraordinary and compelling reasons which would justify a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

      Burke argues her medical conditions place her at an increased risk of contracting the coronavirus. Unfortunately, her circumstances are not extraordinary in the context that many individuals across the nation are in the same or similar position, and her medical condition and her potential susceptibility to COVID-19 would remain the same whether or not she is released. While the Government understands the difficulties facing inmates, this particular case does not meet the

---

[5] Burke's date of birth is January 27, 1975, making her 45 years of age. Revised Presentence Investigation Report, at p. 2.

requirements of the law or policy. Further, while the Government acknowledges that certain underlying health problems can increase the risk of complications should a person contract COVID-19, any additional risk posed to Burke by exposure to COVID-19 is purely hypothetical.

Additionally, Burke's motion does not take into consideration or acknowledge the measures BOP is undertaking to prevent any spread, including suspension of social visitation, internal inmate movements, legal visits, official staff travel, training, access by volunteers and many contractors; extensive screening of staff and inmates (including screening of all new inmates); quarantine; and modified operations to maximize social distancing as much as practicable. Given that no persons will be admitted to BOP facilities without being screened for symptoms and risk of infection, the risk that Burke will be infected simply as a result of incarceration is not necessarily higher than her risk of infection upon release. Based on this record, there is no evidence than BOP custody in general or custody at FCI Waseca in particular puts Burke at greater risk of contracting the coronavirus than the general population in the United States.

Although our nation in the midst of a national crisis requiring extraordinary measures, § 3582 contemplates compassionate release, not the widespread release of inmates serving lawfully-imposed sentences.   The Third Circuit recently stated that the fact that COVID-19 exists in the federal prison system is an insufficient basis for granting early release.

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See generally* Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp. Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance. And given the Attorney General's directive that BOP "prioritize the use of [its] various statutory

authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," we anticipate that the statutory requirement will be speedily dispatched in cases like this one. Memorandum from Attorney Gen. to Dir., Bureau of Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. So we will deny Raia's motion.

*United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020).

A district judge in North Dakota recently found a defendant, also an inmate at FCI Waseca, failed to meet her burden of showing "an extraordinary and compelling" basis for granting a sentence reduction. In *United States v. Condon*, Slip Copy, 2020 WL 2115807 (N.D. May 5, 2020), the defendant sought compassionate release due to COVID-19. The defendant in that case was 61 years old. She alleged she suffered from " ' asthma, chronic obstructive pulmonary disease, cardiovascular disease, hepatitis C, hypertension and hidradenitis supurativa (an inflammatory skin disease that is frequently described as an auto-immune disorder)'." *Condon* at *2. The defendant alleged that COVID-19 and her existing health problems made her susceptible to serious illness in prison.[6]

In reviewing the situation, the district judge stated, "[w]hile sympathetic to Condon's concern regarding the effects of COVID-19 in the federal prison system, the Court does not find that her circumstances clear the high bar necessary to warrant a sentence reduction at this time." *Condon* at 4. In denying the motion, the judge noted the defendant, like Burke had not claimed her health conditions could not be managed within BOP or that her ability to function in the prison environment was impaired. The judge also noted that the defendant was in her 50's when she was involved in a conspiracy to distribute crack cocaine, and the sentencing judge was aware

---

[6] The defendant also sought compassionate release based on disparity between her sentence and the sentence she might have received if she had been sentenced after enactment of the FSA. *Condon*, at *3.

of her health issues at the time she was sentenced.  *Id.*  The judge then cited a number of other cases in which other district courts had denied similar motions filed by defendants with similar medical issues.

The judge in that case then also noted the efforts made by BOP to protect prisoners from possible infection.  "Condon's motion has not shown that the BOP's response to the pandemic at FCI Waseca has been inadequate in any way. Accordingly, Condon has not met the burden to demonstrate that her susceptibility to COVID-19 while incarcerated presents an extraordinary and compelling reason for a sentence reduction." *Condon* at *5.

Similarly, Burke has failed to show that BOP's response to the pandemic, in general and/or at FCI Waseca in particular is inadequate, and she has failed to meet her burden of establishing "an extraordinary and compelling reason" to reduce her sentence.

**II.      This Court should deny Burke's request to be resentenced to home confinement.**

Burke asks the Court to reduce her sentence to home confinement for the remainder of her sentence. (Filing 213). The Court should decline the request, because read in conjunction, 18 U.S.C. §§3621(b) and 3624(c) impose upon the BOP a qualified obligation to facilitate a prisoners' transition from incarceration in a prison facility to a halfway house. (*See Elwood v. Jeter*, 386 F.3d 842, 844, 847 (8th Cir. 2004).) "There is no question that § 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment." *Fults v. Sanders*, 442 F.3d 1088, 1090 (8th Cir. 2006). In a concurring opinion, Justice Bright stated the Second Chance Act of 2007 marked "an increasing special obligation to help federal offenders successfully reenter into society." *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring) (citing Pub. L. No. 110-199, 122 Stat. 657 (Apr. 9, 2008)). The First Step Act, under which the defendant is seeking release, further expanded the BOP's authority to place prisoners, providing more ways

9

to reach rehabilitation goals, but it did not change a District Court's authority to place an inmate, and does not provide authority for the Court to order home confinement. Regardless of the Court's determination on compassionate release, the authority to determine the defendant's placement for the remainder of his sentence rests with the BOP.

**III.     Burke's request is not ripe for review by this court.**

Burke is still within the 14-day time period in which she could appeal the decision of the Warden denying her request.  (Exhibit B).  Although § 3582(c)(1)(A) appears to permit an inmate to file a motion with the sentencing court after denial of her request to the Warden, she should not be permitted to simultaneously make this request to this Court and BOP, risking conflicting decisions and the possibility of repeated litigation.

If this Court does not find that Burke's motion should be denied based on the failure to show extraordinary and compelling reasons warranting a reduction in sentence, this Court should stay the motion until she exhausts her administrative remedies, because the BOP is in the best position to evaluate her request. While Congress indisputably acted in the First Step Act to expand the availability of compassionate release, it expressly imposed on inmates the requirement of initial resort to administrative remedies. There is good reason for this requirement. The Bureau of Prisons conducts an extensive assessment for such requests. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. Those Procedures show the Bureau of Prisons completes a diligent and thorough review, with considerable expertise concerning both the inmate and the conditions of confinement. Its assessment will always be of value to the parties and the Court.

For all of these reasons, BOP is in the best position to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations based on an inmate's background and medical history, and more general considerations regarding the conditions and needs at particular facilities. The provision of § 3582(c)(1)(A) prioritizing administrative review makes sense, not only in the ordinary case, but also during the unusual circumstances of this pandemic. Even though Burke's request was denied by the Warden, while time remains for an administrative appeal, it would be not be appropriate to prevent BOP from engaging in that review.

The BOP is well aware that COVID-19 is an illness which has infected large numbers of people and caused many deaths in a short period of time. Accordingly, BOP has taken significant measures to protect the health of the inmates in its charge. Planning for the potential of coronavirus transmissions began in January 2020. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control (CDC), including review of guidance from the World Health Organization (WHO). On March 13, 2010, the BOP announced it was implementing the Coronavirus (COVID 19) Phase Two Action Plan ("Action Plan") in order to minimize the risk of COVID-19 transmission into and inside its facilities. The Action Plan comprises many preventive and mitigation measures, including the following:

> **Screening of Inmates and Staff:** All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. (Staff registering a temperature of 100.4 degrees F or higher will be barred from the facility on that basis alone.)

Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP.  Any contractor or volunteer who requires access will be screened using the same procedures as applied to staff prior to entry.

**Quarantine Logistics:** The Action Plan directs all BOP institutions to assess their stockpiles of food, medicines, and sanitation supplies and to establish quarantine areas within their facilities to house any detainees who are found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol.

**Suspension of Social Visits and Tours:** The BOP has placed a 30-day hold on all social visits, such as visits from friends and family, to limit the number of people entering the facility and interacting with detainees. This suspension will be reevaluated at the end of the 30 days.  In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended for at least the first 30 days that the Action Plan is in effect.

**Suspension of Legal Visits:** The BOP has also placed a 30-day hold on legal visits at which time the suspension will be reevaluated. Case-by-case approval for legal visits, after the attorney has been screened for infection in accordance with the screening protocols for prison staff, and confidential legal calls will be allowed in order to ensure access to counsel.

**Suspension of Inmate Movements:** The BOP has also ceased the movement of inmates and detainees among its facilities for at least the first 30 days that the Action Plan is in effect. Though there will be exceptions for medical treatment and similar exigencies, this will prevent transmissions between institutional populations. Likewise, all official staff travel has been cancelled, as has most staff training.

**Modified Operations:** Finally, the Action Plan requires wardens at BOP facilities to modify operations in order to maximize social distancing. Among the possible actions are staggering of meal times and recreation time.

Further details regarding the efforts made by the BOP to confront the issues presented by COVID-19 are available at: https://www.bop.gov/resources/news/20200313_covid-19.jsp, and at a daily updated resource page: https://www.bop.gov/coronavirus/index.jsp. These measures are designed to sharply mitigate the risks of COVID-19 transmission in a BOP institution. BOP

professionals will continue to monitor this situation and adjust practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Nevertheless, some inmates have become ill, and more likely will in the weeks ahead, but it is not appropriate to exclude BOP from reviewing applications for compassionate release. There are many challenging factors to consider during this unprecedented pandemic, and the BOP should have the opportunity to assess those factors during the statutorily required review period. For example, despite the current pandemic crisis, the BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the public. It must use its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. It must consider numerous other factors, including the availability of transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced, or no service), and of supervision of inmates once released (at a time when Probation Offices have had to cut back on home visits and supervision).

In addition, BOP has been granted wider authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the Director of BOP, upon considering the totality of the circumstances regarding each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. This authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g) to home confinement. Also, Section 12003(b)(2) of the

Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits BOP, if the Attorney General finds that emergency conditions will materially affect its ability to function, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."

Even though the Government asks the Court to dismiss Burke's motion, the Government is sensitive to the issues she raises related to the coronavirus pandemic. The Government does not minimize those concerns or the risk to inmates such as Burke. At the present time, the BOP has taken aggressive actions to mitigate that danger. If the situation changes, it will take action to attempt to protect all inmates, including those who may be more susceptible to adverse results due to age and/or existing ailments.

### Conclusion

For the reasons stated herein, the United States respectfully requests that this Court deny Burke's Motion to Reduce Sentence for Compassionate Release.

DATED this 26th day of May, 2020.

UNITED STATES OF AMERICA, Plaintiff

JOSEPH P. KELLY
United States Attorney
District of Nebraska

By:     s/  Sara E. Fullerton
        SARA E. FULLERTON #18314
        Assistant U.S. Attorney
        Room 487 Federal Building
        100 Centennial Mall North
        Lincoln, NE  68580
        Tel: (402) 437-5241
        Fax: (402) 437-5390
        sara.fullerton@usdoj.gov

14

CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered participants.


s/ Sara E. Fullerton
Assistant U.S. Attorney