IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:17-CR-3089 |
| vs. | MEMORANDUM AND ORDER |
| SHAWNDELL L. BURKE, | |
| Defendant. | |

    This matter is before the Court on correspondence from defendant Shawndell Burke (filing 213) that the Court has construed as a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). After careful consideration, the Court will grant Burke's motion.

    Pursuant to § 3582(c)(1)(A)(i), a defendant may (after exhausting her administrative remedies) move for reduction of her term of imprisonment based upon "extraordinary and compelling reasons." The Court, after considering the factors enumerated in 18 U.S.C. § 3553(a), may grant the motion if extraordinary and compelling reasons warrant the reduction, and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. And pursuant to U.S.S.G. § 1B1.13(2), the Court must also find that the defendant is not a danger to the safety of any other person or to the community.

    Before addressing the merits of Burke's claim, the government proffers several threshold objections to the Court's consideration of her motion. *See* filing 218. The Court has confronted those arguments before. *See United States v. Jenkins*, No. 4:15-CR-3079, 2020 WL 2814437 (D. Neb. May 26, 2020).

To begin with, the Court finds no merit to the suggestion that a prisoner must prove exhaustion of her administrative appellate remedies even when 30 days have passed since her request for compassionate release was presented to the warden of her institution. *See* filing 218 at 3-4, 10-15. As the Court has explained, the plain language of § 3582(c)(1)(A) permits a prisoner to move the Court for compassionate release after "either (1) the defendant has fully exhausted all administrative rights to appeal or (2) the lapse of 30 days from the receipt of such a request by the warden," and "the statute doesn't say that the second option evaporates if the warden happens to deny the prisoner's request before 30 days is up." *Jenkins*, 2020 WL 2814437, at *2. Here, the government concedes that Burke's request was presented to the Warden on April 2, 2020, *see* filing 220-1, and that her motion was filed more than 30 days later, *see* filing 213.[1] That's all the exhaustion the law requires.

Nor does the Court agree with the government's suggestion that its discretion is cabined by § 1B1.13. As the Court explained, that guideline has not been amended in response to the statutory changes wrought by the First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194 (2018), and so no longer remains "applicable" guidance for the current version of § 3582(c)(1)(A)(i). *Jenkins*, 2020 WL 2814437, at *3. Instead, the Court will consider the criteria set forth in § 1B1.13 to the extent they remain helpful and relevant—but rejects the government's suggestion that any unenumerated "extraordinary and compelling reasons" for a sentence reduction require a determination by the Director of the Bureau of Prisons. *See* filing 218 at 6.

Finally, the government also disputes Burke's claim on the merits, arguing that her circumstances aren't sufficiently extraordinary or compelling.

---

[1] Not that a premature motion would necessarily have been fatal. *See Jenkins*, 2020 WL 2814437, at *2 n.1.

Filing 218 at 6-9. The Court disagrees. The compassionate release investigation report completed for the Court by the Probation and Pretrial Services Office substantiates Burke's claims regarding her medical condition—most pertinently, a seizure disorder possibly associated with a brain injury, hypertension, and latent tuberculosis. Filing 225 at 2; *see* filing 213; filing 222. Hypertension is a recognized comorbidity associated with severe cases of COVID-19. *E.g.* Fei Zhou et al., *Clinical course and risk factors for mortality of adult inpatients with COVID-19 in Wuhan, China: a retrospective cohort study*, 395 The Lancet 1054-62 (Mar. 28, 2020), https://bit.ly/3eNqDmD; Chaomin Wu et al., *Risk Factors Associated With Acute Respiratory Distress Syndrome and Death in Patients With Coronavirus Disease 2019 Pneumonia in Wuhan, China*, JAMA Internal Medicine (Mar. 13, 2020), https://bit.ly/2XwfMHN. Research has yet to conclusively establish the risks associated with either latent tuberculosis or brain injury, but the known pulmonary comorbidities and symptoms of COVID-19 and increasing evidence of vascular complications make those conditions relevant as well.[2]

Just as important, however, is the fact that Burke has relatively little time left to serve. She is presently scheduled to transition to a residential

---

[2] The Court does not intend to dismiss the government's representations regarding the Bureau of Prisons' efforts to prevent or contain COVID-19. *See* filing 218 at 7. And the Court is not aware of anything suggesting that FCI Waseca is at particular risk. But even assuming that the BOP is doing all it can, and that FCI Waseca has not been hard-hit so far, it is well-understood that there is only so much that can be done to protect prisoners in an institutional environment. The Attorney General has recognized as much. Memorandum from the Attorney General to the Director of the Bureau of Prisons (Apr. 3, 2020), https://bit.ly/2UayeDW; Memorandum from the Attorney General to the Director of the Bureau of Prisons (Mar. 26, 2020), https://bit.ly/3cuQrCB.

reentry center in October to be followed by outright release in April 2021. Filing 225 at 1-2. The Court very recently had occasion to review Burke's case, *see* filing 208, filing 209, and is extremely familiar with her circumstances. She presents no danger to the community. She has done well while incarcerated, avoiding disciplinary action and pursuing educational opportunities. She has served the bulk of her sentence, and forcing her to serve the rest while facing an enhanced risk from COVID-19 is neither necessary nor wise.

In this instance, the § 3553(a) factors—particularly the need for the sentence to provide Burke with correctional treatment "in the most effective manner," *see* § 3553(a)(2)(D)—counsel in favor of transitioning Burke to a residential reentry center a few months early.[3] Taken together, Burke's medical condition, the risks of COVID-19, and the fact that she has little time remaining in prison are "exceptional and compelling reasons" to modify her sentence accordingly. The Court will impose a sentence of time served, but amend the conditions of Burke's supervised release to require her to reside for 180 days at a residential reentry center, preferably Dismas-Kearney.

IT IS ORDERED:

1.  Burke's motion for compassionate release (filing 213) is granted.

---

[3] To be clear: the Court has decided to order Burke to a residential reentry center because the Court thinks that's best for her, particularly given her extremely well-documented history of substance abuse and difficulty in drug treatment. *See* filing 225 at 1-2. The Court finds no merit to the government's suggestion that home confinement could not have been imposed had the Court found it appropriate. Filing 218 at 9-10; *see Jenkins*, 2020 WL 2814437, at *4 n.4 (D. Neb. May 26, 2020).

- 5 -

2. The defendant's sentence is reduced to time served, with an additional special condition of supervised release requiring Burke to reside for 180 days at a residential reentry center.

3. An amended judgment will be entered.

Dated this 4th day of June, 2020.

                BY THE COURT:

                */s/ John M. Gerrard*
                John M. Gerrard
                Chief United States District Judge